IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD A. DAVIS,                              *

   Plaintiff,                    *

v.                                           *          Civil No. TJS-21-2593

FRANK KENDALL, Secretary,                    *
Department of the Air Force,
               *

   Defendant.
       *  *  *  *  *  *

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss or for Summary Judgment (ECF No. 21) filed by Defendant Frank Kendall, Secretary, Department of the Air Force.[1] Having considered the submissions of the parties (ECF Nos. 21, 25 & 30), I find that a hearing is unnecessary.[2] *See* Loc. R. 105.6. For the following reasons, the Motion will be granted.

**I. Background**

Plaintiff Ronald Davis is proceeding pro se. He filed this lawsuit against Defendant Frank Kendall, Secretary of the Department of the Air Force, on October 8, 2021. ECF No. 1. Plaintiff's Complaint is inscrutable, composed largely of confusing sentence fragments that reference dozens of acronyms. Plaintiff, a black male, claims that Defendant discriminated against him on the basis of race, color, and sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Specifically, he alleges that Defendant did not select him for promotion, subjected him to a

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 13.

[2] As explained below, Plaintiff's motion for leave to file surreply (ECF No. 34) will be denied and Defendant's motion to extend time to respond (ECF No. 35) will be denied as moot.

hostile work environment, and retaliated against him for engaging in protected activity, leading to Plaintiff's early retirement. ECF No. 1 ¶ 1. Defendant moves to dismiss Plaintiff's claims for hostile work environment, constructive discharge, retaliation, and discrimination based on sex or gender for failure to state a claim upon which relief can be granted. ECF No. 21-1 at 1-12. As for Plaintiff's non-selection claim, Defendant moves for summary judgment. *Id.* at 12-16. The Motion is ripe for decision.

## II.   Discussion

### A.   Legal Standard

#### 1.   Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted

inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## 2.   Summary Judgment Under Rule 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials

of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### B.       Plaintiff's Request for Leave to Amend and File Surreply

After Defendant filed its reply, Plaintiff filed a document titled "Motion for Leave and Reply to Defendant's Reply." ECF No. 34. To the extent that Plaintiff requests leave to file a surreply, the motion is denied. As a general matter, surreplies are not permitted. Loc. R. 105.2. Plaintiff has not shown good cause for the Court to allow any surreply here. Plaintiff argues that Defendant did not address "all of the disputed issues Plaintiff presented his Complaint and Responses." ECF No. 34 at 3. Even assuming that is true, allowing Plaintiff to file a surreply would not cure this problem. The Court will determine whether Defendant has adequately addressed Plaintiff's arguments.

Local Rule 103.6 states how a party may request leave to file an amended pleading. This rule requires that when a party requests leave to file an amended pleading, "the original of the proposed amended pleading shall accompany the motion." Loc. R. 103.6(a). In addition, the party seeking to file an amended pleading must identify all amendments in the pleading by filing a red-lined copy "in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type." Loc. R. 103.6(c). Here, Plaintiff did not comply with this rule. It is unclear what amendments Plaintiff proposed to make to the Complaint because he does not identify how he intends to amend the Complaint. To the extent that

Plaintiff wishes to amend his Complaint to include the "complete Investigative File / Report of Investigation dated June 30, 2017," the Motion is denied. Rule 8 requires a plaintiff's complaint to contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not require a plaintiff to attach as exhibits to the complaint all relevant evidence. And to the extent that Plaintiff wishes to amend the Complaint in some other way, Plaintiff has not shown that justice requires such amendment. *See* Fed. R. Civ. P. 15(a)(2). Accordingly, Plaintiff's "Motion for Leave and Reply to Defendant's Reply" (ECF No. 34) is **DENIED**. Defendant's motion to extend time to respond (ECF No. 35) is **DENIED AS MOOT**.

### C.    Hostile Work Environment

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). To establish a prima facie case of racial discrimination based on a hostile work environment, a plaintiff must prove (1) unwelcome conduct; (2) based on the plaintiff's race; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer. *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). "Conduct is 'unwelcome' when it continues after the employee sufficiently communicates that it is unwelcome." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117-18 (4th Cir. 2021) (quoting *Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 557-58 (D. Md. 2006)). "Establishing the third element requires that the plaintiff show that the work environment was not

only subjectively hostile, but also objectively so." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011). "To determine whether an environment is hostile, the Court must look at all the circumstances, which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Roberts*, 998 F.3d at 117-18 (quoting *Harris*, 510 U.S. at 23); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015).

Defendant argues that Plaintiff's hostile work environment claim[3] must be dismissed because Plaintiff does not actually allege harassment or other abusive conduct. ECF No. 21-1 at 7. Instead, the claim appears to turn on Plaintiff's non-selection for promotion. *Id.* In his response brief, Plaintiff summarizes ways that he previously "felt disrespected" at work, but does not explain what conduct led to this subjective belief. And importantly, Plaintiff does not cite to any allegations concerning workplace conduct that was severe or pervasive to allow his hostile work environment claim to proceed. To the extent that Plaintiff argues that his workplace was hostile because of his transfer from a temporary lead position to the accounting division, his supervisors' modifications of certain job requirements to "deceive" him, and his supervisors' efforts to block him from serving as a "team lead" by withholding certain reports, the Court finds that these allegations are not severe or pervasive enough to alter Plaintiff's conditions of employment and create an abusive work environment.

---

[3] Plaintiff's Complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Still, the Court will liberally construe Plaintiff's Complaint and assume that Plaintiff intended to assert a hostile work environment claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that documents filed by pro se litigants must be "liberally construed" and that pro se complaints "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

Plaintiff's allegations in his hostile work environment claim fall short of the "high bar" he is required to clear to satisfy the severe or pervasive test. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Even accepting the allegations as true and viewing all inferences in the light most favorable to him, a reasonable person in Plaintiff's position would not have found the work environment objectively hostile or abusive under the standard required in the Fourth Circuit.

"Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Lambert v. Savaseniorcare Admin. Servs., LLC*, No. DLB-20-2768, 2022 WL 3027993, at \*15 (D. Md. July 29, 2022) (quoting *Sunbelt Rentals*, 521 F.3d at 315). Other courts have rejected hostile work environment claims arising from more serious harassment than what Plaintiff complains of here. *See id.* (citing *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (unpublished) (per curiam) (affirming dismissal of hostile work environment claim when the plaintiff alleged a supervisor mockingly yelled at the plaintiff, yelled and pounded her hands during a meeting, repeatedly criticized the plaintiff, made snide comments to the plaintiff, and unfairly scrutinized the plaintiff's compliance with directives); *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006) (holding "rude treatment" by colleagues, including one agitated interaction, was not severe or pervasive harassment); *Lubula v. Rex Healthcare, Inc.*, No. 5:13-CV-822-BO, 2015 WL 11120503, at \*2 (E.D.N.C. Mar. 3, 2015), *aff'd sub nom. Lubula v. Rex Healthcare*, 620 F. App'x 207 (4th Cir. 2015) (unpublished) (granting summary judgment to defendants where the harassment complained of involved the use of foul language and false accusations); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished) (granting summary judgment to employer where the employee complained of

repeated criticism and an incident where a supervisor yelled at her, told her she was incompetent, pushed her down in her chair, and blocked the door)); *see also Holloway v. State*, 32 F.4th 293, 299-301 (4th Cir. 2022) (affirming dismissal of hostile work environment claim where supervisor undermined plaintiff's leadership, yelled at plaintiff during meetings, and required plaintiff to address him as "sir"); *Taylor v. Go-Getters, Inc*., No. ELH-20-3624, 2021 WL 5840956, at *13 (D. Md. Dec. 9, 2021) (dismissing hostile work environment claim in which plaintiff alleged that his supervisor "'constantly' phoned him outside of work hours, reprimanded him for failing to perform his work-related duties, warned him that 'Black Males historically do not do well at Go-Getters,' failed to provide him with effective assistance, and made sarcastic comments" and collecting cases in which other courts have dismissed similarly non-severe claims); *Pounds v. Maryland Judiciary*, No. SAG-20-3379, 2021 WL 1751154, at *4–5 (D. Md. May 4, 2021) (dismissing hostile work environment claim in which the plaintiff's supervisor communicated in a "demeaning and belittling way, referring to Plaintiff as 'you people' and directing subordinates to closely scrutinize and target Plaintiff").

For these reasons, the Court finds that Plaintiff has failed to state a plausible hostile work environment claim. The Motion will be granted as to this claim.

### D.   Constructive Discharge

Defendant argues that to the extent that Plaintiff has raised a constructive discharge claim, it must be dismissed. ECF No. 21-1 at 8. A claim for constructive discharge has two elements. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019). First, a plaintiff must show that his "'working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Id.* (quoting *Green v. Brennan*, 578 U.S. 447, 553-54 (2016)). Second, a plaintiff must actually resign because of those conditions. *Id.*

"'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Id.* (quoting *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998), *as recognized by Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 327 (4th Cir. 2000)). Instead, intolerability "'is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign,' . . . that is, whether he would have had no choice but to resign." *Id.*

"Critically, difficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign." *Id.* (citing *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (being yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign); *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001) (co-worker ostracism, denial of a management position and mandatory counseling for turning in an inaccurate time card would not have compelled a reasonable person to resign); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F. 3d 239, 244 (4th Cir. 1997) (being ignored by co-workers and top management was insufficient to establish constructive discharge); *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (dissatisfaction with work assignments, perceived unfair criticism and difficult and unpleasant working conditions are not so intolerable as to compel a reasonable person to resign)).

Plaintiff has failed to plead a plausible constructive discharge claim. A reasonable person in his position would not have found his non-promotion to make his working conditions so intolerable as to compel him to resign. Further, Plaintiff has not made any allegation that his

resignation or retirement was involuntary, coerced, or under duress. *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988).

For these reasons, the Court finds that Plaintiff has failed to state a plausible constructive discharge claim. The Motion will be granted as to this claim.

###### E.   Retaliation

Defendant argues that if Plaintiff has raised a retaliation claim, it must be dismissed. ECF No. 21-4 at 9-10. Title VII bars employers from retaliating against an employee's protected activity. 42 U.S.C. § 2000e-3. To state a prima facie claim of retaliation, a plaintiff must allege he engaged in a protected activity, that the employer acted adversely against him, and that the protected activity was causally connected to the employer's adverse action. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Causal connection may be established "through two routes." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021)). The plaintiff may provide evidence of (1) temporal proximity or (2) "the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity." *Johnson*, 839 F. App'x at 784.

Plaintiff generally alleges that Defendant retaliated against him for "prior EEO activity (9l4W16026) initial informal EEO complaint on July 28-29, 2016; formal employment discrimination complaint on September 28, 2016." ECF No. 1 at 16. Even assuming that Plaintiff has plausibly alleged that he engaged in protected activity and that Defendant took adverse actions against him, *see* ECF No. 25 at 24, he has not alleged any plausible causal connection between the two things. And assuming that Plaintiff is relying on the temporal proximity of his protected activity to the adverse actions, nearly six months passed between the time his supervisors learned

of his alleged protected activity and his performance downgrade. *See* ECF No. 25 at 24. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) ("[T]his Court has held that a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation is too long to establish a causal connection by temporary proximity alone.") (internal quotation marks omitted).

For these reasons, the Court finds that Plaintiff has failed to state a plausible retaliation claim. The Motion will be granted as to this claim.

### F.     Discrimination Based on Race and Gender – Disparate Treatment

Defendant argues that any sex or gender-related discrimination claim must be dismissed because the Complaint does not plausibly allege any causal relation between an adverse action and sex or gender discrimination. ECF No. 21-1 at 10. The Court will also address Plaintiff's race-related disparate treatment claim.

Under Title VII, "[d]isparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification" such as race or gender. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (quoting *Carter*, 33 F.3d at 456 n.7). "To establish a prima facie case of disparate treatment, [a plaintiff] must show: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins*, 936 F.3d at 207 (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

"In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). Instead, a Title VII plaintiff is "required to allege facts to satisfy the elements of a cause of action

created by that statute." *Id.* (quoting *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). "Nevertheless, the elements of a prima facie case are a helpful guide in assessing the adequacy of the allegations." *Niner v. Garrett Cnty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018).

Reading the Complaint liberally, Plaintiff has alleged that he suffered two adverse actions. First, he alleges that he was not allowed to start work before 8:00 a.m. Second, he alleges that he was not selected for promotion. As for his work schedule, Plaintiff does not allege how Defendant's refusal to allow him to start work before 8:00 a.m. had a material and detrimental effect on the conditions of his employment. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) ("An adverse action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *see also Melendez v. Bd. of Educ. for Montgomery Cnty.*, 711 F. App'x 685, 688 (4th Cir. 2017) (holding a two-hour schedule change does not amount to an adverse action); *Lazarte v. Montgomery Cnty. Pub. Sch.*, No. DLB-20-1515, 2021 WL 5770281, at *5 n.3 (D. Md. Dec. 6, 2021) (explaining that schedule changes do not constitute an adverse action) (citing *Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (noting that an employee's removal from an alternate work schedule did not constitute an adverse action); *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 591, 603 (D. Md. Feb. 1, 2011) (noting a return to an ordinary work schedule did not constitute an adverse action even when the plaintiff alleged other employees were permitted to work flex schedules)).

In an attempt to plead a plausible discrimination claim for Defendant's failure to select him for Promotion, Plaintiff identifies 10 comparators in his Complaint. ECF No. 1 at 13-16 (stating that "Plaintiff's similarly situated comparators supporting Agency subjected Plaintiff to hostile,

adversary, and abusive work environment"). "[A]lthough a complaint need not plead facts sufficient to establish a prima facie case of discrimination, it must allege facts to support a plausible inference of disparate treatment." *Ryan v. McAleenan*, No. ELH-19-1968, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020) (citing *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)). A plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Ryan*, 2020 WL 1663172, at *18 (internal quotation marks omitted). But when a plaintiff relies on "comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects. *Id.* (citations omitted). To do so, the plaintiff must allege that he is "similar in all relevant respects to [his] comparator," including "that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal quotation marks and citations omitted).

While a plaintiff's comparators need not be identical to the plaintiff, "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, [t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Id.* (internal quotations marks and citations omitted). A "complaint's conclusory assertions that the plaintiff and a co-worker are on equal footing is insufficient to nudge a discrimination claim across the line from conceivable to plausible." *Id.* (citations omitted).

Six of the comparators Plaintiff identifies are not true comparators because they are members of the same protected classes as Plaintiff.[4] Their more favorable treatment than Plaintiff does not make his claims of disparate treatment plausible; it makes them less plausible. This leaves four true comparators but, for reasons explained below, even with these comparators, Plaintiff has not alleged plausible disparate treatment claims.

Plaintiff alleges the following about Alice Hutchinson, a white female:

hired as team lead had no leadership experience "on paper" arrived in Agency, August 22, 2016 treated differently than Plaintiff as team lead and ranking civilian – [citations omitted] stated no leadership "on paper" [citations omitted].

ECF No. 1 at 13.

Plaintiff alleges the following about Jill Gran, a white female:

prior team lead departed on April 15, 2016 treated differently than Plaintiff as lead and ranking civilian . . . comparator Gran bragged about having freedom to revise TAR memo; evidence not all Reviews Team members listed on TAR memo . . . . Treatment as team lead . . . . S1 says, TAR duties always performed by Reviews Team.

*Id.* at 14 (citations omitted).

Plaintiff alleges the following about Mary Logan, a white female:

Selected as Vendor Pay, Team Lead with no leadership experience; S1 had Ms. Logan change Plaintiff's previously drafted TAR memo; agreed to on June 13, 2016 with S1 and S2 without even informing Plaintiff. S1 used TAR Memo Plaintiff drafted prior . . . S1 treatment of Plaintiff as Team Lead . . . TAR Memo without all team members listed . . . unlawful practices . . . disputes her testimony taken in S2 office with S2.

*Id.* (citations omitted)

---

[4] Plaintiff identifies five comparators who are Black (Vernita Stockman, Belinda Harris-Croom, Barbara Wallace, Loretta Tyler, and Sylena Harrell) and one comparator who is male (Thomas Stafford). Even if these comparators were not members of the same protected classes as Plaintiff, his allegations about them are so speculative and non-specific as to render them invalid comparators anyway.

Plaintiff alleges the following about Kathy Burleson, a white female:

S1 called from outside office, asked to take attendance of Reviews Team; Plaintiff, ranking GS civilian. Agency provided no evidence of Burleson appointment to Emergency Preparedness and Accountability prior to April 28, 2016 . . . . Ms. Beaslye-Odum states "ordinary the team lead" takes attendance.

*Id.* at 15 (citations omitted).

Alice Hutchinson, Jill Gran, Mary Logan, and Kathy Burleson are not valid comparators because Plaintiff's allegations about them are conclusory and insufficient. He does not allege any way in which they were treated more favorably than him, nor does he allege that they were selected for the Systems Accountant position over him (he alleges elsewhere that another person was selected for this position), nor does he allege with specificity how the work history, qualifications, and responsibilities of Ms. Hutchinson, Ms. Gran, Ms. Logan, and Ms. Burleson were the same as his. See Ryan, 2020 WL 1663172, at *19. Without allegations that Plaintiff and these alleged comparators are similarly situated in all relevant respects, only speculation can fill the gaps in Plaintiff's complaint.[5] *Id.* Plaintiff has thus failed to plead a plausible claim of disparate treatment based on his reference to comparators. The Motion will be granted as to any gender-based discrimination claim. Plaintiff's race-related discrimination claim will be addressed next.

---

[5] Plaintiff addresses Defendant's arguments regarding the alleged comparators in his response brief. His arguments regarding the comparators do not cure the deficiencies in the Complaint. Even so, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citation omitted); *see, e.g., Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274 at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss).

### G.        Race Discrimination – Non-Selection Claim

Plaintiff has not presented any direct evidence of race discrimination. And as addressed in the preceding section, Plaintiff's allegations of race discrimination based on disparate treatment are purely speculative and implausible. The court now addresses Plaintiff's argument that Defendant he can prove race discrimination by showing that Defendant's explanation for his non-selection is pretextual.

Under Title VII, a plaintiff may prevail on a claim of employment discrimination by two avenues of proof. *Scott v. Lori*, No. ELH-19-2014, 2020 WL 3833129, at *22 (D. Md. July 8, 2020) (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019)). First, a plaintiff may offer "direct or indirect" evidence of discrimination under "ordinary principles of proof." *Id.* (quoting *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996)). Second, a plaintiff may follow the *McDonnell Douglas* burden-shifting approach. *Id.*; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").

> The McDonnell Douglas framework is comprised of three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory.

*Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981)).

Defendant moves for summary judgment on Plaintiff's non-selection claim, arguing that Plaintiff cannot established that Defendant's reason for not selecting Plaintiff was pretext for racial discrimination.[6] ECF No. 21-1 at 12-16.

In his Complaint, Plaintiff alleges that Defendant selected Hoyt Swann ("Mr. Swann"), a white male, for the Systems Accountant position that Plaintiff sought. ECF No. 1 at 4. The Court will assume, for the sake of argument, that Plaintiff has established a prima facie case of race discrimination in connection with his non-selection for the Systems Accountant position. Having assumed that Plaintiff has made a prima face case of race discrimination, the burden shifts to Defendant "to articulate a non-discriminatory . . . reason for the adverse action." *Guessous*, 828 F.3d at 216. If Defendant makes the necessary showing, the "burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory." *Id.* To "establish that an employer's proffered reason for the challenged action is pretext for discrimination, the plaintiff must prove both that the reason was false, and that discrimination was the real reason for the challenged conduct." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (internal quotation marks omitted).

### 1.    Defendant's Articulated Reason for Plaintiff's Non-Selection

Defendant explains that it did not select Plaintiff for the Systems Accountant position because another applicant (Mr. Swann) was more qualified. ECF Nos. 21-1 at 12 & 21-2 at 2, 4. According to Defendant's evidence, Maritza Ramos Lopez ("Ms. Lopez"), whose title was

---

[6] Under Rule 56(d), if a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Plaintiff did not seek relief under Rule 56(d) in this case.

Director of Financial Management and Comptroller for the Air Force District of Washington, Financial Management Directorate ("AFDW/FM"), was the selecting official for the Systems Accountant position at issue. *Id.* According to Ms. Lopez's Declaration, she hired Mr. Swann for the position because "he was the best qualified individual." ECF No. 21-2 at 2. Ms. Lopez explains how she made the hiring decision. *Id.* at 3. First, she required her Division Chiefs "to have a set of criteria to evaluate the candidates on the referral list." *Id.* She then required the Division Chiefs to provide her "the list of the top candidates, the scoring of the records, and a recommendation for the top 3." *Id.* Once she received that information, she used her "own personal analysis" to select a candidate. *Id.* Ms. Lopez selected Mr. Swann for the Systems Accountant position because "[h]e was the best candidate." *Id.* at 4. She identified what made him the best candidate: "Extensive AF [(Air Force)] finance experience, leadership and multi-discipline knowledge, all were considered as a value in the performance as a team lead for the Requisition Section." *Id.* As for why Ms. Lopez found Mr. Swann more qualified for the position than Plaintiff, she explained that while Plaintiff "did work within the Accounting Division, . . . at the time in question he was working in the Reviews Section not the Requisition Section." *Id.* Further, although both Plaintiff and Mr. Swann possessed Masters Degrees in Business Administration, Mr. Swann had more "AF finance experience, leadership and multi-disciplin[ary] knowledge," making him a "better fit for the position." *Id.* Ms. Lopez acknowledges that Plaintiff met the minimum qualifications to be considered for the position, but he was not the better candidate (he was "the #2 candidate on the list"). *Id.* at 4-5. According to Ms. Lopez, Plaintiff "lacked demonstrated leadership experience required for a team lead, did not have the extensive AF financial systems experience," and did not "have a thorough understanding of AF operations." *Id.* at 5. Ms. Lopez knew Plaintiff before the selection decision, having previously promoted him "to a GS-12 Reviews Lead" position, and

having "had several discussions/mentorship with him on leadership concepts and behaviors." *Id.*
Ms. Lopez did not know Mr. Swann before the selection decision. *Id.* And generally, Ms. Lopez
states that since she arrived at her current position, she has "espoused a strong message of
nondiscrimination" and does "not accept discrimination within [her] Directorate." *Id.*

Defendant has also submitted a Declaration from Gennaro Rucci, III ("Mr. Rucci"). ECF
No. 21-3. During all relevant times, Mr. Rucci was the Chief of the Accounting Division at
AFDW/FM. *Id.*at 2. Ms. Lopez was Mr. Rucci's first-level supervisor. *Id.* Mr. Rucci acted as
Plaintiff's second-level supervisor. *Id.* at 3. Regarding Plaintiff's non-selection claim, Mr. Rucci
states that he was involved in selecting Mr. Swann for the Systems Accountant position. *Id.* at 9.
He explains:

> Mr. Dillow and I comprised the review panel. We applied 5 criteria with a ten point
> max per criteria score for a max total of 50 points per person. We separately
> reviewed the certificate and resumes. We applied a rating score for each person and
> area, applied to spreadsheet, which reflected individual criteria points and total
> points for each candidate. We sent spreadsheet containing candidates scoring to our
> FM, MS. Lopez and Deputy FM, Mr. Varga. We sorted the top three candidates
> and Complainant was ranked number two (second highest) on the list.

*Id.*

The five criteria used in the selection process were: Air Force ("AF") experience, AF/RM
systems skills, AF Multi-Discipline Education, and Leadership experience. *Id.* at 10. No interviews
were conducted during the selection process. *Id.* Instead, the review panel submitted their ratings
and recommendation to their "FM leaders." *Id.* At the time that the review panel made their
recommendations, Mr. Rucci "did not personally know Mr. Swann," but he had heard of his name
and knew where he was assigned. *Id.* at 11-12. Mr. Rucci did not recommend Plaintiff for the
position because he "did not have the scope of experience that the selected/top candidate had." *Id.*
Plaintiff "came in second place and scored 30 points of 50 total points." *Id.* Mr. Swann scored 49

points of 50 total points. *Id.* The main reason that Plaintiff came in second place was that he "did not have the scope of experience (and other factors identified, except education) that the second candidate possessed." *Id.* at 13. Specifically:

> Although [Plaintiff] received [the maximum score of] 10 points for education, there are 4 other critical areas considered for the selection, where [Plaintiff] (30/50 = 60%) did not score as high as Mr. Swain. [Plaintiff] did work w/in the Accounting Office, but was not already working in the position (Requisitions)…rather he worked in another arena (Reviews). All 5 criteria reviewed are important and necessary to ensure the candidate can successfully serve in a more complex leadership position….[Plaintiff] was not the highest rated candidate, based on the certificate of personnel provided to us by Personnel Office.

*Id.*

Mr. Rucci stated that Plaintiff's race, color, and sex were not factors in the hiring decision. *Id.* at 14. Plaintiff's other second-level supervisor, Mr. Dillow, provided similar statements in his Declaration (ECF No. 21-4).

In sum, Defendant has submitted evidence that Mr. Swann was hired for the Systems Accountant position because Mr. Swann scored higher than Plaintiff on the combined selection criteria. Defendant has also submitted evidence that Plaintiff's non-selection had nothing to do with his race, color, sex, or any other protected characteristic. According to Defendant's evidence, Plaintiff was not selected for the position because he was less qualified than another applicant, Mr. Swann.

### 2.      Plaintiff's Proof of Pretext

Because Defendant has stated a legitimate, nondiscriminatory reason for Plaintiff's non-selection, and has backed it up with evidence, the burden shifts back to Plaintiff to show that Defendant's stated reason for his non-selection is both false and that discrimination was the real reason for his non-selection. The Court will address each of Plaintiff's arguments below.

Plaintiff first states that the EEOC erred in accepting Defendant's stated reasons for his non-selection even though Plaintiff had presented "factual qualifications with affidavits" to prove that Defendant's stated reasons were pretextual. ECF No. 25 at 28. Whether the EEOC made an error is irrelevant; the burden is on Plaintiff to prove that Defendant's stated reasons for his non-selection were pretextual.

Second, Plaintiff argues that he was "better and best qualified, and his qualifications were 'plainly superior' and 'clearly superior' to . . . Mr. Swann's qualifications for the Systems Accountant position in 2016." *Id.* Plaintiff does not support this argument with evidence. Further, Plaintiff's argument is contradicted by the evidence that Defendant submitted in connection with its Motion. Mr. Swann was more qualified than Plaintiff, not the other way around.

Third, Plaintiff argues that he was rejected in favor of a white male "whose qualifications were inferior when compared to Plaintiff's qualifications." *Id.* Plaintiff mentions that someone's (it is unclear if he is talking about himself or Mr. Swann) "military career field, grades and civilian GS-series, grades and job titles are intentionally not revealed in order to deceive as the EEOC did know how long he was a GS-0301." *Id.* at 29. This argument is unintelligible, unsupported by evidence, and does not show that Defendant's reasons for Plaintiff's non-selection were pretextual.

Fourth, Plaintiff argues that Defendant's agents do not dispute that his past work performance was satisfactory, and that his "prior Civilian Ratings of Record were all rated 'fully successful.'" *Id.* This does not show that Defendant's stated reasons for non-selection were pretextual. Plaintiff may have had satisfactory work performance and "fully successful" Civil Ratings of Record, but Defendant's uncontroverted evidence indicates that he was still less qualified than Mr. Swann. *Id.*

Fifth, Plaintiff argues that he "presented observable superior qualifications compared to the selectee Mr. Swann, and without providing any analysis of its decision the EEOC just stated the employer selectee Mr. Swan[n] was more qualified/better qualified." *Id.* Again, it is irrelevant whether the EEOC made an error. At this stage, it is Plaintiff's burden to prove that Defendant's stated reasons for his non-selection were pretextual. His statement that he was better qualified is conclusory and unsupported by evidence.

Sixth, Plaintiff suggests Defendant used subjective criteria in evaluating the candidates for the Systems Accountant position as a "convenien[t] pretext for unlawful discrimination." *Id.* Plaintiff does not support this conclusory argument with evidence, so the Court must reject it.

Seventh, Plaintiff argues that Defendant used the wrong "job assessments" to hire for the Systems Accountant position, as Defendant characterized it as a resource management position instead of an accounting position. *Id.* The Court rejects this argument because it is unsupported by evidence and because Defendant's uncontroverted evidence indicates that Defendant used the proper criteria in hiring for the position. *See* ECF Nos. 30 at 10; 30-2, 30-3.

Eighth, Plaintiff apparently argues that Defendant did not properly verify his (or Mr. Swann's, it is unclear) "eligibility and qualifications for this type of appointment prior to selection." *Id.* at 30. Plaintiff does not support this argument with any evidence. But even if Plaintiff believes that Defendant did not give proper weight to his qualifications, it is not this Court's role to judge whether Defendant's human resources decisions are the best. At this stage, the Court is looking only to determine whether Plaintiff can show that Defendant's hiring decision was pretextual. This argument does not advance Plaintiff's position.

Ninth, Plaintiff argues that Defendant's statements that no interviews were conducted is contradicted by other evidence. *Id.* ("S2 and S1 email to S3 and Mr. Varga saying 'we spoke w/

the top candidates."). Even assuming the evidence Plaintiff cites does contradict Defendant's evidence that no interviews were conducted, it has no bearing on whether Defendant's stated reasons for non-selection were pretextual. Whether or not Defendant conducted interviews or spoke with the top candidates, Defendant determined that Mr. Swann was more qualified than Plaintiff. Plaintiff has not proven that this reason for his non-selection is false.

Tenth, Plaintiff presents a series of arguments challenging Mr. Swann's qualifications. *Id.* at 31. He argues that "Mr. Swann did not manage a budget by himself as the employer claims," but instead "was on a team of three (3) people, and Mr. Swann was not the ranking member on the team of 3." *Id.* Plaintiff claims that this "contradicts [Defendant's] claim [that] Mr. Swann 'managed a very large program,'" and suggests that Mr. Swann did not have leadership experience. *Id.* The Court rejects this argument because it has no bearing on whether Defendant's reasons for Plaintiff's non-selection were pretextual. As Defendant notes, a person can participate in management by being part of a leadership team or management group. And even if Defendant improperly evaluated Mr. Swann's management or leadership experience, Plaintiff still has not proffered a shred of evidence that would allow a reasonable jury to conclude that the real reason for Plaintiff's non-selection was discrimination. The Court rejects Plaintiff's other related arguments about Mr. Swann's qualifications and the criteria that Defendant used to select for the Systems Accountant position because they have no bearing on whether Defendant's hiring decision was pretextual. Alternatively, even assuming that they are true, Plaintiff has presented no evidence that would allow a reasonable jury to conclude that Defendant's real reason for not hiring him as Systems Accountant was discrimination.

Eleventh, Plaintiff argues that something "wrong, suspicious, and questionable" occurred during the selection process. The Court rejects this argument as conclusory, speculative, and unsupported by evidence.

In summary, Plaintiff has failed to meet his burden that Defendant's stated reason for hiring Mr. Swann rather than Plaintiff as Systems Accountant was false and that the real reason was unlawful discrimination. The undisputed evidence is that Defendant did not select Plaintiff as Systems Accountant because another candidate, Mr. Swann, was more qualified. Whether Defendant's assessment was correct or prudent does not concern this Court. Because Plaintiff has not shown that Defendant's explanation for the hiring decision was false and that the real reason was discrimination, his non-selection claim is without merit. Summary judgment will be awarded to Defendant on this claim.

## III.    Conclusion

For the reasons set forth above, Defendant's Motion (ECF No. 21) is **GRANTED**. Plaintiff's claims for hostile work environment, constructive discharge, retaliation, and discrimination based on sex or gender are **DISMISSED**. As for Plaintiff's non-selection claim, summary judgment is entered in favor of Defendant. A separate Order follows.

Date: December 14, 2022                           _____/s/_____
                                                  Timothy J. Sullivan
                                                  United States Magistrate Judge